**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL GELSINGER,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:19-cv-01654** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **ERIC ARMEL, <u>et al.</u>,**[1] | : | |
| **Respondents** | : | |

## <u>MEMORANDUM</u>

This matter is before the Court pursuant to Petitioner Michael Gelsinger ("Petitioner")'s

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  The § 2254

petition is fully briefed and ripe for disposition.

**I.     BACKGROUND**

**A.     Petitioner's State Court Proceedings**

Petitioner is serving a term of life imprisonment imposed after he was convicted by a jury

of first-degree murder, attempted homicide, prohibited possession of a firearm, and carrying a

firearm without a license.  See <u>Commonwealth v. Gelsinger</u>, Docket No. CP-22-CR-0000926-

2014 (Dauphin C.C.P. Dec. 5, 2014).[2]  The Superior Court of Pennsylvania set forth the

background of the case as follows:

---

[1] During the pendency of this litigation, Eric Armel has replaced Mark Capozza as the Superintendent of SCI Fayette.  Under the Federal Rules of Civil Procedure, a public officer's "successor is automatically substituted as a party."  See Fed. R. Civ. P. 25(d).  The Court, therefore, will direct the Clerk of Court to amend the docket to replace Respondent Mark Capozza with Eric Armel.

[2] In a habeas proceeding, federal courts may take judicial notice of state court records.  See <u>Minney v. Winstead</u>, Civ. No. 12-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); <u>see also</u> <u>Reynolds v. Ellingsworth</u>, 843 F.2d 712, 714 n.1 (3d Cir. 1988).  Accordingly, in reviewing Petitioner's § 2254 petition, the Court takes judicial notice of the publicly-available dockets of Petitioner's criminal and collateral post-conviction proceedings in the Court of Common Pleas of Dauphin County, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.

At approximately 1:00 a.m. on December 6, 2013, Officer Michael Rudy of the Harrisburg City Police received a report of shots fired around the 1600 Block of Thompson Street in Harrisburg. He arrived at 1619 Thompson Street and encountered Shawn Fox, who resided there, standing on the front porch. Officer Rudy observed a non-responsive female, later identified as Fox's girlfriend, Tiana Dockens ("Victim"), lying on the porch. As Officer Rudy attempted to treat Victim, Fox's roommate and cousin, Justin Baxter, approached the porch "cursing, yelling," and acting "belligerent." Officer Rudy discovered "a very small hole" on Victim's abdomen. Other police officers arrived, and Officer Rudy rode in the ambulance with Victim to Hershey Medical Center where she was pronounced dead. The Dauphin County Coroner's Office performed an autopsy that morning and concluded, "[t]he cause of death [was] a gunshot wound to the abdomen" and the manner of death was homicide.

At the scene, police recovered three .380 cartridge casings that were discharged from the same firearm and five .40 casings discharged from a single Glock pistol. Police determined the Glock belonged to Baxter. They believed Appellant, while a passenger in a car driven by his brother, Joseph Payne-Casiano, exchanged gunfire with Baxter resulting in Victim's death. Moreover, a bullet recovered from Victim was determined to be "of the .380, 9-millemeter class. The Glock was ultimately discovered outside of 1617 Thompson Street, and the other firearm was never recovered.

On December 11, 2013, the Commonwealth filed a criminal complaint charging Appellant with the above crimes. The Commonwealth joined Payne-Casiano as a co-defendant, and charged him with murder and attempted murder.

On November 18, 2014, [Petitioner] filed a motion for severance based on the Commonwealth's intention to introduce at trial a hand-written note by Payne-Casiano to another inmate. The contested portion of the note read, "1. Get at Moe see what she gone [sic] say at my bro trial, try convince her to say bull shot first." [Petitioner] argued that under the United States Supreme Court decision in Bruton v. United States, 391 U.S. 123 (1968), if his codefendant declined to testify, the admission of Payne-Casiano's note would violate the Confrontation Clause of the Sixth Amendment. The trial court held oral argument and denied the motion on November 25, 2014.

Commonwealth v. Gelsinger, No. 627 MDA 2015, 2016 WL 1221444, at *1 (Pa. Super. Ct. Mar. 29, 2016) (internal citations to the record omitted). Petitioner's jury trial began on December 1, 2014. See id. at *2. During trial, the victim's father and sister testified that Petitioner began shooting before Baxter did. See id. at *2-3. Petitioner testified on his own behalf, and the essence of his defense "was that Baxter fired first, and he was 'in fear [for his] life, so [he]

2

returned fire.'"  See id.  On December 5, 2014, the jury convicted Petitioner of first-degree murder, attempted homicide, possession of a firearm prohibited, and carrying a firearm without a license.  See id.  Petitioner subsequently filed a post-sentence motion challenging the weight and sufficiency of the evidence, which the trial court denied on April 3, 2015.  See id.

Petitioner timely appealed to the Superior Court of Pennsylvania, raising the following claims for relief: (1) the evidence was insufficient to prove that Petitioner committed first-degree murder and attempted homicide because the Commonwealth failed to prove that Petitioner "acted willfully, deliberately, or with premeditation" and failed to disprove that Petitioner acted in self-defense; (2) the trial court erred in denying Petitioner's motion for severance; and (3) the verdict was against the weight of the evidence because the testimony presented by the Commonwealth was inconsistent and because the evidence failed to establish that Petitioner "acted with malice and the specific intent to kill."  (Doc. No. 13-1 at 11.)  On March 29, 2016, the Superior Court affirmed Petitioner's judgment of sentence.  See Gelsinger, 2016 WL 1221444, at *1.  On August 22, 2016, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal.  See Commonwealth v. Gelsinger, 290 MAL 2016 (Pa. 2016).

Petitioner subsequently filed a pro se Post Conviction Relief Act ("PCRA") petition, raising several claims for relief, including claims of ineffective assistance of counsel.  See Gelsinger, Docket No. CP-22-CR-0000926-2014; (Doc. No. 1 at 5).  Jennifer Tobias ("attorney Tobias") was appointed to represent Petitioner and filed an amended PCRA petition.  (Doc. No. 1 at 5.)  Attorney Tobias raised the following four (4) claims for relief in the amended PCRA petition: (1) trial counsel was ineffective for failing to argue that the Harrisburg Police Department did not perform gunshot residue testing on Payne-Casiano; (2) trial counsel was ineffective for failing to object to the Commonwealth's introduction of Baxter's holster and

3

magazine at trial; (3) appellate counsel was ineffective for not raising the issue regarding the failure to perform gunshot residue testing on appeal; and (4) appellate counsel was ineffective for failing to file a cross-appeal on direct review as to the unreasonable application of established federal and state law regarding the alleged <u>Bruton</u> violation.  (<u>Id.</u> at 5-6.)  The PCRA court held a hearing on Petitioner's amended PCRA petition on May 31 and June 1, 2018.  <u>See</u> <u>Gelsinger</u>, Docket No. CP-22-CR-0000926-2014.  On August 17, 2018, the PCRA court dismissed Petitioner's amended PCRA petition.  <u>See</u> <u>id.</u>  The Superior Court affirmed the dismissal of Petitioner's amended PCRA petition on March 4, 2019.  <u>See</u> <u>Commonwealth v. Gelsinger</u>, No. 1513 MDA 2018, 2019 WL 1012156, at *1 (Pa. Super. Ct. Mar. 4, 2019).  On September 10, 2019, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal. <u>See</u> <u>Commonwealth v. Gelsinger</u>, No. 193 MAL 2019 (Pa. 2019).

      **B.**    **Petitioner's Federal Habeas Proceedings**

     Petitioner filed his § 2254 petition on September 25, 2019.  (Doc. No. 1.)  He raises the following grounds for relief in his petition:

1.     PCRA counsel was ineffective for failing "to raise the claim that trial counsel was ineffective for failing to request that the jury be instructed regarding the lesser included charge of aggravated assault concerning the attempted murder of Justin Baxter";

2.     PCRA counsel was ineffective for failing "to raise the claim that trial counsel failed to impeach Monique Dockens with her prior statement to Officer Michael Sanderson";

3.     PCRA counsel was ineffective for failing "to raise the claim that trial counsel was ineffective for failing to . . . request a cautionary eyewitness instruction concerning the testimony of Dion Dockens and Monique Dockens";

4.     The trial court erred by denying Petitioner's motion for severance, thus causing a violation of his rights under the Sixth Amendment's Confrontation Clause and <u>Bruton</u>;

5.      PCRA counsel was ineffective for failing to assert that trial counsel was ineffective for failing to request that Payne-Casiano's note be suppressed;

6.      PCRA counsel was ineffective for failing "to raise the claim that trial counsel was ineffective for failing to file a motion requesting a change of venue, due to the trial's extensive pre-trial publicity";

7.      PCRA counsel was ineffective for failing "to raise the claim that trial counsel was ineffective for failing [to] object to the prosecution [questioning] potential jurors in [the] presence of the entire jury panel whether they have heard about the pretrial publicity revolving around the case";

8.      The evidence presented at trial was insufficient to prove that Petitioner committed first-degree murder and attempted homicide;

9.      PCRA counsel was ineffective for failing "to raise the claim that trial counsel was ineffective for failing [to] object to the [trial court's] instruction of consciousness of guilt"; and

10.     PCRA counsel was ineffective for failing "to raise the claim that trial counsel was ineffective for failing to request that the transferred intent instruction the [trial court] gave appl[ied] to third degree murder as well as first degree murder."

(Id.)

Following an Order to show cause (Doc. No. 12), Respondents filed a response to the petition on October 30, 2019 (Doc. No. 13).  Petitioner filed a traverse and a memorandum of law in support thereof on November 15, 2019.  (Doc. Nos. 16, 17.)  In an Order dated January 21, 2020, the Court directed Respondents to file a supplemental response.  (Doc. No. 18.)  Specifically, the Court directed Respondents to address Claims One, Two, Three, Five, Six, Seven, Nine, and Ten pursuant to the standard set forth in Martinez v. Ryan, 556 U.S. 1 (2012), and to expand the record by filing copies of Petitioner's pro se PCRA petition, his counseled amended PCRA petition, the PCRA court's order dismissing his amended PCRA petition, and the PCRA court's amended opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.  (Id.)  Respondents filed their supplemental response on February 4, 2020 (Doc. No. 19), and Petitioner filed a supplemental traverse on March 9, 2020 (Doc. No. 20).

5

In an Order dated March 30, 2020, the Court noted that an evidentiary hearing was necessary to determine whether the alleged ineffectiveness of PCRA counsel could excuse Petitioner's procedural default of his claims that trial counsel was ineffective for failing to make certain requests pertaining to jury instructions.  (Doc. No. 21.)  On April 1, 2020, the Court appointed Assistant Federal Public Defender Melissa Porter to represent Petitioner in the above-captioned action.  (Doc. No. 22.)  The parties filed pre-hearing memoranda on September 22, 2020 and October 6, 2020.  (Doc. Nos. 35, 36.)  The Court conducted the evidentiary hearing on June 17, 2021.  After the transcript was filed (Doc. No. 58), the Court directed the parties to file post-hearing memoranda (Doc. No. 59). Petitioner filed his post-hearing memorandum on July 23, 2021 (Doc. No. 61), and Respondents filed theirs on August 4, 2021 (Doc. No. 62).

## II.    LEGAL STANDARDS

### A.    Substantive Standard

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings."  See Dunn v. Colleran, 247 F.3d 450, 468 (3d Cir. 2001) (quoting Calderon v. Coleman, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  See Engle v. Isaac, 456 U.S. 107, 128 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law."  Id.  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  See Brecht v. Abrahamson, 507 U.S. 619, 620 (1993).

6

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." See 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

### B.    Exhaustion and Procedural Default

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b). Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999). A federal claim may be exhausted either by being raised on direct appeal or presented in post-conviction PCRA proceedings. See id. at 845. In addition, a claim is exhausted when it has been "fairly presented" to the state court. See Picard v. Connor, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts." See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). The petition must do so "in a manner that puts [the respondents] on notice that a federal claim is being asserted." See Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim." Collins v. Sec'y of Pa. Dep't of

Corr., 742 F.3d 528, 542 (3d Cir. 2014) (quoting Baldwin v. Reese, 541 U.S. 27, 32 (2004)).

Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available

state remedies.  See 28 U.S.C. § 2254.  Overall, the exhaustion requirement advances the goals

of comity and federalism while reducing "piecemeal litigation."  See Duncan v. Walker, 533

U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to the state

courts, but state procedural rules bar the applicant from seeking further relief in state courts, the

exhaustion requirement is satisfied because there is an absence of available State corrective

process."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).  Claims deemed exhausted

because of a state procedural bar are considered to be procedurally defaulted.  See Lines v.

Larkins, 208 F.3d 153, 159 (3d Cir. 2000).  The district court then analyzes the claims under the

procedural default doctrine.  See id.  The purpose of this rule is to prevent habeas petitioners

from avoiding the exhaustion doctrine by defaulting their claims in state court.  See Coleman v.

Thompson, 501 U.S. 722, 732 (1991).  In Cone v. Bell, 556 U.S. 449 (2009), the United States

Supreme Court explained:

> It is well established that federal courts will not review questions of federal law
> presented in a habeas petition when the state court's decision rests upon a state-law
> ground that is independent of the federal question and adequate to support the
> judgment.  In the context of federal habeas proceedings, the independent and
> adequate state ground doctrine is designed to ensure that the State's interest in
> correcting their own mistakes is respected in all federal habeas cases.  When a
> petitioner fails to properly raise his federal claims in state court, he deprives the
> State of an opportunity to address those claims in the first instance and frustrates
> the State's ability to honor his constitutional rights.  Therefore, consistent with the
> longstanding requirement that habeas petitioners must exhaust available state
> remedies before seeking relief in federal court, we have held that when a petitioner
> fails to raise his federal claims in compliance with relevant state procedural rules,
> the state court's refusal to adjudicate the claim ordinarily qualifies as an
> independent and adequate state ground for denying federal review.

Id. at 465 (internal quotations and citations omitted).

8

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'"  See Leyva v. Williams, 504 F.3d 357, 365 (3d Cir. 2007) (citing Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007)).  The requirements of independence and adequacy are distinct.  See id.  A rule is "independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims."  See Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004).  A rule is "adequate" if "it was firmly established, readily ascertainable, and regularly followed at the time of the purported default."  See Levya, 504 F.3d at 366 (quoting Szuchon v. Lehman, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice."  See Coleman, 501 U.S. at 750.  In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto.  See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000) (citing Harris v. Reed, 489 U.S. 255 (1989)).  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural

9

rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982); see also Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." See Schlup v. Delo, 513 U.S. 298, 326 (1995). Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice. See id. In Goldblum v. Klem, 510 F.3d 204 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained the applicable two-step inquiry as follows. First, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" See id. at 225 (citing Hummard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004)). If a petitioner can meet this standard by establishing "cause and prejudice" or a "fundamental miscarriage of justice," the Court will excuse his default and review the merits of the claim presented. See id.

C.      Standard for Ineffective Assistance of Counsel Claims

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." See id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second,

10

under Strickland, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See id. at 694.

The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

## III.   DISCUSSION

In Grounds One, Two, Three, Five, Six, Seven, Nine, and Ten, Petitioner raises claims that PCRA counsel was ineffective for failing to raise several claims concerning trial counsel's ineffectiveness during PCRA proceedings. Petitioner readily admits that these claims were not raised before the state courts. (Doc. No. 1 at 9, 11, 15, 19, 20, 22, 14-25, 27.) Throughout the pendency of this litigation, Respondents have consistently averred that Grounds One, Two, Three, Five, Six, Seven, Nine, and Ten were unexhausted and, therefore, not procedurally defaulted when Petitioner filed his § 2254 petition because he had one (1) year from September

11

10, 2019 to raise them in the state courts. (Doc. Nos. 13 at 27-28, 32, 36; 19 at 33-35, 41, 45, 47-49; 36 at 13-15; 62 at 1-3.) Specifically, Respondents maintain that Petitioner should have raised his claims regarding PCRA counsel's ineffectiveness in a timely, serial PCRA petition. (Doc. No. 62 at 2.)

Freestanding claims of ineffective assistance of PCRA counsel are not cognizable on federal habeas review. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); Holman v. Gillis, 58 F. Supp. 2d 587, 597 (E.D. Pa. 1999) (noting that "a claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas corpus petition because the right to effective assistance of PCRA counsel exists pursuant to state law, and is not mandated by the Constitution or laws or treaties of the United States"). The Court, however, has previously construed Petitioner's § 2254 petition as not asserting freestanding claims of ineffective assistance of PCRA counsel. Rather, Petitioner relies on the United States Supreme Court's decision in Martinez v. Ryan, 566 U.S. 1 (2012), to argue that any procedural default of his underlying claims regarding trial counsel's ineffectiveness should be excused on the basis of PCRA counsel's ineffectiveness. (Doc. No. 1 at 9, 11, 15, 19, 20, 22, 14-25, 27.) Respondents' arguments regarding Petitioner's failure to file a serial PCRA petition are, therefore, misplaced.

In Martinez, the Supreme Court recognized that, under certain circumstances, the procedural default of an ineffective assistance of trial counsel claim may be excused where the default was caused, in turn, by ineffective assistance of counsel, or the lack of counsel, in initial post-conviction collateral proceedings. See Martinez, 566 U.S. at 8-18. Specifically, the Supreme Court held:

Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 17.  For Martinez to apply, Petitioner must show that his ineffective assistance of trial counsel claims have "some merit," and that he had ineffective counsel at the initial-review stage of state collateral proceedings.  See Workman v. Sup't Albion SCI, 915 F.3d 928, 937 (3d Cir. 2019).  To demonstrate that a claim has some merit, a petitioner must "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  See id. at 938.  This standard is different from the "standard applied on the merits under Strickland v. Washington," see Workman, 915 F.3d at 938, because "substantiality is a notably lower standard than the proof of prejudice required by Strickland's second prong."  See Richardson v. Sup't Coal Twp. SCI, 905 F.3d 750, 764 (3d Cir. 2018).

To demonstrate that PCRA counsel's deficient performance caused prejudice, Petitioner "must show that his [PCRA counsel] could have obtained a different result had [s]he presented the now-defaulted ineffective-assistance-of-trial-counsel claim."  See Workman, 915 F.3d at 938. However, at this stage, "what is important is that the underlying ineffective-assistance-of-trial-counsel claim is 'substantial,' not that a petitioner has, in fact, been 'prejudiced' by trial counsel's deficient performance under Strickland."  See id. at 939.  Accordingly, if Petitioner "shows that his underlying ineffective-assistance-of-trial-counsel claim has some merit and that his state post-conviction counsel's performance fell below an objective standard of reasonableness, he has shown sufficient prejudice from counsel's ineffective assistance that his procedural default must be excused under Martinez."  See id. at 941.

13

The Court, therefore, must determine whether Petitioner's ineffective assistance of trial counsel claims have some merit and then, if some merit is found, determine whether PCRA counsel was ineffective for not raising those claims.  Because the Court held an evidentiary hearing with respect to Grounds One and Ten, the Court will consider those claims first.

### A.      Ground One

As his first ground for relief, Petitioner maintains that trial counsel was ineffective for "failing to request that the jury be instructed regarding the lesser included charge of aggravated assault concerning the attempted murder of Justin Baxter."  (Doc. No. 1 at 9.)  Petitioner maintains that the question of whether he "had a specific intent to kill Justin Baxter was hotly contested."  (Id.)  According to Petitioner, "[t]rial counsel placed [him] in an all-or-nothing situation and lost—a tactic that the United States Supreme Court has frowned upon."  (Id.)

### 1.      Petitioner Can Overcome His Procedural Default

Petitioner's claim meets the "some merit" standard set forth by the Third Circuit in Workman.  The United States Supreme Court has held that a defendant "is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."  See Keeble v. United States, 412 U.S. 205, 208 (1973).  "The purpose of a lesser-included offense instruction is to provide the jury with a viable alternative other than conviction or acquittal of the more serious crime, so that 'the jury will accord the defendant the full benefit of the reasonable-doubt standard.'"  See Middleton v. Nogan, No. 16-5966, 2021 WL 960697, at *7 (D.N.J. Mar. 15, 2021) (quoting Beck v. Alabama, 447 U.S. 625, 634 (1980)).  In Pennsylvania, aggravated assault is a lesser-included offense of attempted homicide.  See Commonwealth v. Hilliard, 172 A.3d 5, 13 (Pa. Super. Ct. 2017).  An individual commits aggravated assault when he, inter alia, "attempts to cause serious bodily

14

injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life" or "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon."  See Pa. Cons. Stat. Ann. § 2702(a)(1), (4).

During the June 17, 2021 evidentiary hearing, Petitioner's trial counsel, Petra Gross ("attorney Gross") and Andrea Haynes ("attorney Haynes"), testified that they should have been aware at the time of Petitioner's trial that aggravated assault was a lesser-included offense of attempted homicide.  (Doc. No. 58 at 39, 58.)  Attorney Gross admitted that she did not have any conversations with Petitioner or attorney Haynes about the inclusion of a lesser-included offense instruction, and stated that she did not have a "reason for that" when asked.  (Id. at 39-40.) Attorney Haynes noted that she did not recall having any discussions about such with Petitioner or attorney Gross.  (Id. at 55.)  Both attorney Gross and attorney Haynes admitted that a reasonable jury could have found that Petitioner fired his gun with the intent to only cause bodily harm and without the intent to kill Justin Baxter.  (Id. at 40, 59.)  The record reflects that attorneys Gross and Haynes recognized a basis upon which to request a lesser-included offense instruction and failed to request that the jury be provided such an instruction.  The Court, therefore, concludes that Petitioner has demonstrated that Ground One is substantial.  See Richardson, 905 F.3d at 764.  Thus, Petitioner's procedural default of Ground One will be excused if he can demonstrate that PCRA counsel was ineffective under the standards set forth in Strickland.

The Court recognizes that there is "a 'strong presumption' that an attorney's decision to pursue some claims and decline to pursue others is a tactical choice."  See Workman, 915 F.3d at 942 (quoting Yarborough v. Gentry, 540 U.S. 1, 6 (2003)).  That presumption, however, may be

rebutted with a "showing that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  See McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999).  Upon review of the record, however, the Court concludes that Petitioner has demonstrated that PCRA counsel was deficient for failing to raise this claim for relief.

During the evidentiary hearing, attorney Tobias testified that she has never tried a homicide case as a defense attorney and that her only experience with trying homicide cases was as a prosecutor.  (Doc. No. 58 at 64.)  She testified that, as PCRA counsel, she may raise new or additional claims independent from those initially presented by the petitioner in his pro se PCRA petition.  (Id. at 73.)  In Petitioner's case, however, attorney Tobias focused on "what [she] thought his strongest points were that he raised in this pro se petition."  (Id. at 78.)  On direct examination, attorney Tobias admitted that an aggravated assault charge is appropriate "in some cases."  (Id. at 77.)  She also admitted that she was aware that Petitioner "testified that he did not intend to kill anyone" and that it was "possible" that "he fired his gun with the intent to either frighten people or defend himself or simply get away from the person that was firing at him." (Id. at 78.)  However, she did not believe that "an aggravated assault drop charge was appropriate" in Petitioner's case.  (Id.)  In explaining her reasoning, attorney Tobias stated: "I believe there were numerous, numerous shots fired.  I think when you have kind of like a gunfight in the middle of the street, the intent, in my opinion, is not an aggravated assault."  (Id. at 78-79.)

Notwithstanding counsel's assessment of intent, the evidence does support a finding by a reasonable trier of fact that Petitioner intended to assault rather than kill Justin Baxter.  Yet, counsel declined to pursue the claim related to a jury instruction on the lesser-included offense of aggravated assault in favor of significantly weaker claims.  This was ineffective assistance.  See

Gelsinger, 2019 WL 1012156, at *3-5 (rejecting all of Petitioner's ineffective assistance claims as meritless).

In sum, the Court concludes that Petitioner's underlying ineffectiveness of trial counsel claim has merit, and that he has demonstrated that PCRA counsel's performance was deficient under Strickland.  The Court, therefore, finds that Petitioner has satisfied the requirements of Martinez, and his procedural default of Ground One is excused.  Thus, the Court considers the merits of Ground One below.  See Martinez, 566 U.S. at 17 (noting that "[a] finding of cause and prejudice does not entitle the prisoner to habeas relief.  It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted.").

## 2.  Merits of Petitioner's Claim

Once procedural default is excused, this Court's "review of a petitioner's claim is de novo because the state court did not consider the claim on the merits."  See Bey v. Sup't Greene SCI, 856 F.3d 230, 236 (3d Cir. 2017) (citing Bronshtein v. Horn, 404 F.3d 700, 710 n.4, 715 (3d Cir. 2005)).  To demonstrate that he was denied effective assistance of trial counsel, Petitioner must satisfy both prongs of Strickland, set forth supra.  See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001) (citing United States v. Nino, 878 F.2d 101, 104 (3d Cir. 1989)).

First, Petitioner must demonstrate that trial counsel's performance was deficient, which requires him to show "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [to the] defendant by the Sixth Amendment."  See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001) (quoting Strickland, 466 U.S. at 687).  When making this assessment, the Court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  See id. (quoting Strickland, 466 U.S. at 689).  When "deficiencies in

counsel's performance are severe and cannot be characterized as the product of strategic judgment, ineffectiveness may be clear." See Workman, 915 F.3d at 943 (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)). Ultimately, "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable." See Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000).

As noted supra, a defendant "is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." See Keeble, 412 U.S. at 208. The record reflects that trial counsel should have been aware at the time of Petitioner's trial that aggravated assault was a lesser-included offense of attempted homicide. (Doc. No. 58 at 39, 58.) Attorney Gross admitted that she did not have any conversations with Petitioner or attorney Haynes about the inclusion of a lesser-included offense instruction, and stated, when asked, that she did not have a "reason for that". (Id. at 39-40.) Attorney Haynes noted that she did not recall having any discussions about such with Petitioner or attorney Gross. (Id. at 55.) Both attorney Gross and attorney Haynes conceded that a reasonable jury could have found that Petitioner fired his gun intending only to injure rather than kill Justin Baxter. (Id. at 40, 59, 61.) Moreover, trial counsel mistakenly believed that they could not request a lesser-included offense instruction and argue a theory of self-defense at the same time. (Id. at 39, 58.) Overall, the record reflects that attorneys Gross and Haynes recognized a basis upon which to request a lesser included aggravated assault instruction and failed to request that the jury be so instructed. The record does not support a finding that counsel's decisions on this critical issue were the "product of strategic judgment." See Workman, 915 F.3d at 943 (quoting Gray, 878 F.2d at 711); see also Richards v. Quarterman, 566 F.3d 553, 569-70 (5th Cir. 2009) (concluding that counsel's failure to request a

lesser-included aggravated assault instruction was unreasonable where such an instruction was consistent with a theory of self-defense).  Accordingly, Petitioner meets the first prong of Strickland.

A finding that counsel's performance was deficient, however, "must be paired with specific prejudice—a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  See Workman, 915 F.3d at 944 (quoting Strickland, 466 U.S. at 694).  A reasonable probability equates to "a probability sufficient to undermine confidence in the outcome."  See Strickland, 466 U.S. at 694.  "It is clearly established that this prong is satisfied as long as it is reasonably probable that counsel's deficient performance impacted only one juror's verdict."  See Massey v. Sup't Coal Twp. SCI, --- F. App'x ----, 2021 WL 2910930, at *5 (3d Cir. July 12, 2021).  In the instant case, the Court must determine whether it is reasonably probable that, had the jury been charged on aggravated assault, at least one (1) juror would have found that: (1) Petitioner attempted to cause or did cause serious bodily injury to another; and (2) that he did so "intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." See 18 Pa. Cons. Stat. Ann. § 2702(a)(1).  Aggravated assault may also occur when a defendant "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon."  See id. § 2702(a)(4).  The prejudice standard is not stringent—it is "less demanding than the preponderance standard."  See Jermyn, 266 F.3d at 282.

Respondents assert that this issue is meritless because Petitioner "conceded that he shot at Baxter at trial; his defense was to establish that he acted in self-defense where Baxter shot at him first, not that he never intended to kill Baxter."  (Doc. No. 62 at 3.)  Respondents maintain that Petitioner's theory of self-defense was refuted by witnesses Dion and Monique Dockens, "who

testified that Baxter was walking down the street when [Petitioner] began shooting at him." (<u>Id.</u> at 4.)  According to the trial testimony, Baxter "did not point his gun or make any aggressive movement toward the vehicle as he walked home."  (<u>Id.</u>)  Witnesses also testified that Petitioner "fired at least five shots when he ambushed Baxter while Baxter was defenseless, without his gun drawn, walking down the street and previously expressed his desire to engage in a gunfight with Baxter."  (<u>Id.</u>)  Respondents maintain that the Commonwealth was able to "handedly" disprove Petitioner's self-defense claim when Petitioner "testified he had driven past Baxter by the time he allegedly heard Baxter open fire."  (<u>Id.</u>)  According to Respondents, "the facts did not warrant the trial court instructing on aggravated assault where [Petitioner's] specific intent to kill was obvious."  (<u>Id.</u>)

While correctly pointing out that both Dion and Monique Dockens identified Petitioner as firing the first shot, Respondents conflate analysis of the evidence related to self-defense with that related to an aggravated assault charge.  Indeed, the Commonwealth's refutation of Petitioner's theory of self-defense does not negate a finding by a jury that Petitioner intended a felonious assault, not a murder.  Even should the jury reject Petitioner's testimony that Baxter fired the first shot, causing him to duck down and fire in return, a reasonable jury could readily conclude that Petitioner intended to assault, not kill, Baxter.

The Court recognizes that a jury may infer that a defendant had a specific intent to kill in a situation where he fired multiple shots at "an unsuspecting, unarmed victim who had his back to [the defendant]."  <u>See</u> <u>Commonwealth v. Chine</u>, 40 A.3d 1239, 1242 (Pa. Super. 2012). Regardless of whether the jury credited Petitioner's testimony that Baxter had his gun drawn and is the one who fired first, the uncontroverted evidence presented at trial could support a finding of the lesser charge of aggravated assault.  For example, rather than advancing toward Baxter

20

and taking close aim at a vital part of Baxter's body, Petitioner was a passenger in a fleeing vehicle speeding away from the victim at the time of the assault. Petitioner fired backwards out of the passenger window of the moving vehicle, reducing his chances of a fatal blow to the victim. (Doc. No. 14-5 at 32-35, 56, 81-82, 108; Doc. No. 14-6 at 60.) From such testimony, a reasonable jury could conclude that Petitioner's purpose was to harm Baxter or to simply warn him off. The Third Circuit has recognized that, "even though juries are obligated as a theoretical matter to acquit if they do not find every element of a crime, there is a substantial risk that the jury's practice will diverge from theory when it is not presented with the option of convicting of a lesser offense instead of acquitting outright." See Breakiron v. Horn, 642 F.3d 126, 138 (3d Cir. 2011) (quoting Beck, 447 U.S. at 634) (internal quotation marks omitted). Here, the failure to request a lesser-included aggravated assault charge exposed Petitioner to that risk.

Upon review of the record, the Court concludes that, had trial counsel requested a lesser-included aggravated assault charge, it is reasonably probable that at least one (1) juror would have found reasonable doubt with respect to the attempted homicide charge and would have instead found Petitioner guilty of aggravated assault. Petitioner, therefore, was prejudiced by the lack of such a jury instruction and is entitled to relief with respect to Ground One. While the Court's conclusion regarding Ground One alone entitles Petitioner to section 2254 relief, the Court will address Ground Ten since it was also addressed at the June 17, 2021 evidentiary hearing.

### B.   Ground Ten

As his tenth ground for relief, Petitioner maintains that trial counsel was ineffective for failing to request that a jury instruction regarding transferred intent also apply to the charges of third-degree murder. (Doc. No. 1 at 25.) He avers that such a request would have been proper

21

because "[a]lthough intent to kill is . . . an element of first degree murder, intent [to] commit a malicious act is an element of third degree murder." (Doc. No. 16 at 70.) Specifically, Petitioner asserts that an "instruction that transferred intent applies to third degree murder would have been appropriate if the jury were permitted to consider aggravated assault as a lesser-included offense." (Doc. No. 35 at 19.)

### 1. Petitioner Can Overcome His Procedural Default

Petitioner's claim meets the "some merit" standard set forth by the Third Circuit in Workman. "The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime." Commonwealth v. Gibbs, 626 A.2d 133, 138 (Pa. 1993). As noted supra, an individual commits aggravated assault when he, inter alia, "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life" or "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." See Pa. Cons. Stat. Ann. § 2702(a)(1), (4). Third-degree murder is any "killing done with legal malice but without specific intent to kill required in first degree murder." See Commonwealth v. Geiger, 944 A.2d 85, 90 (Pa. Super. Ct. 2008) (quoting Commonwealth v. Cruz-Centeno, 668 A.2d 536, 539 (Pa. Super. Ct. 1995)). "[M]alice may be found where the defendant has consciously disregarded an unjustified and extremely high risk that [his] conduct might cause death or serious injury to another." Id. "The malice that is required for aggravated assault is the same as that required for third degree murder." Commonwealth v. Miller, 955 A.2d 419, 422 (Pa. Super. Ct. 2008).

As discussed supra, the Court has already concluded that trial counsel was ineffective for failing to request a lesser-included aggravated assault jury instruction. During the evidentiary

hearing, attorney Gross agreed that the theory of transferred intent could apply to a charge of aggravated assault and that, under such a theory, if the jury would have concluded that Petitioner only intended to injure Justin Baxter, that intent would have transferred to a lesser degree of murder as it related to Tiana Dockens—namely, third-degree murder.  (Doc. No. 58 at 40-41.) Attorney Hayes agreed with the same, noting that if someone intends to only shoot someone with no intent to kill that person, but a death results, it would not be an intentional murder.  (Id. at 60.) The record, therefore, reflects that attorneys Gross and Haynes recognized a basis upon which to request a transferred intent instruction as it related to aggravated assault and third-degree murder and failed to request such an instruction.  The Court, therefore, concludes that Petitioner has demonstrated that Ground Ten is substantial.  See Richardson, 905 F.3d at 764.  Thus, Petitioner's procedural default of Ground Ten will be excused if he can demonstrate that PCRA counsel was ineffective under the standards set forth in Strickland.

The Court concludes further that Petitioner has demonstrated that PCRA counsel was deficient for failing to raise this claim for relief.  As discussed supra, the Court has concluded that attorney Tobias was ineffective during Petitioner's PCRA proceedings by declining to pursue a claim related to a jury instruction on the lesser-included offense of aggravated assault in favor of significantly weaker claims.  By not raising such a claim, attorney Tobias also failed to raise a related claim asserting that counsel should have requested that transferred intent apply to the third-degree murder charge.  The claims that attorney Tobias chose to pursue were significantly weaker than a claim concerning transferred intent.  See Gelsinger, 2019 WL 1012156, at *3-5 (rejecting all of Petitioner's ineffective assistance claims as meritless).

In sum, the Court concludes that Petitioner's underlying ineffectiveness of trial counsel claim has merit, and that he has demonstrated that PCRA counsel's performance was deficient

23

Case 1:19-cv-01654-YK-EB   Document 63   Filed 09/02/21   Page 24 of 25

under Strickland.  The Court, therefore, finds that Petitioner has satisfied the requirements of

Martinez, and his procedural default of Ground Ten is excused.  Thus, the Court considers the

merits of Ground Ten below.  See Martinez, 566 U.S. at 17.

### 2.     Merits of Petitioner's Claim

Upon consideration of the Strickland standard set forth supra, the Court concludes that

Petitioner has demonstrated that trial counsel acted deficiently by failing to request an instruction

regarding the application of transferred intent to the third-degree murder charge.  As noted

above, attorneys Gross and Haynes recognized that if the jury would have found that Petitioner

only intended to injure Baxter, that intent would have transferred to a lesser degree of murder as

it related to Tiana Dockens.  (Doc. No. 58 at 40-41, 60-61.)  However, by failing to request a

lesser-included aggravated assault charge, counsel also failed to request a related instruction

regarding the application of transferred intent.  Given this record, the Court cannot conclude that

counsel's performance can be characterized as a "product of strategic judgment."  See Workman,

915 F.3d at 943 (quoting Gray, 878 F.2d at 711).  Accordingly, Petitioner meets the first prong of

Strickland.

As noted supra, the Third Circuit has recognized that, "even though juries are obligated

as a theoretical matter to acquit if they do not find every element of a crime, there is a substantial

risk that the jury's practice will diverge from theory when it is not presented with the option of

convicting of a lesser offense instead of acquitting outright."  See Breakiron, 642 F.3d at 138

(quoting Beck, 447 U.S. at 634) (internal quotation marks omitted).  The Court has already

concluded that counsel's failure to request a lesser-included aggravated assault charge exposed

Petitioner to that risk.  Likewise, by failing to request an accompanying transferred intent

instruction with respect to the third-degree murder charge, counsel again exposed Petitioner to

24

such risk.  Upon review of the record, the Court concludes that, had trial counsel requested a transferred intent instruction, it is reasonably probable that at least one (1) juror would have found reasonable doubt with respect to the first-degree murder charge and would have instead found Petitioner guilty of third-degree murder with respect to Tiana Dockens.  Petitioner, therefore, was prejudiced by the lack of such a jury instruction and is also entitled to relief on Ground Ten.

## IV.    CONCLUSION

As thoroughly discussed above, the Court concludes that Petitioner has overcome his procedural default of Grounds One and Ten, and that trial counsel was ineffective for failing to request a lesser-included aggravated assault charge, as well as an instruction applying transferred intent to the charge of third-degree murder.  The Court, therefore, will conditionally grant Petitioner's § 2254 petition, vacate his convictions and sentences for attempted homicide and first-degree murder,[3] and direct the Commonwealth to retry him on those charges within ninety (90) days.[4]  An appropriate Order follows.

---

[3] As noted supra, Petitioner was also convicted of prohibited possession of a firearm, and carrying a firearm without a license.  See Gelsinger, Docket No. CP-22-CR-0000926-2014.  The Court's grant of habeas relief does not affect Petitioner's convictions and sentences for those counts.

[4] The Court's grant of relief on Grounds One and Ten renders Petitioner's remaining grounds for relief moot.