**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|                                |     |                        |
|--------------------------------|-----|------------------------|
| **MICHAEL GELSINGER,**         | :   |                        |
| **Petitioner**                 | :   |                        |
|                                | :   | **No. 1:19-cv-01654**  |
| **v.**                         | :   |                        |
|                                | :   | **(Judge Kane)**       |
| **ERIC ARMEL, et al.,**        | :   |                        |
| **Respondents**                | :   |                        |

## MEMORANDUM

Before the Court is a habeas corpus petition filed pursuant to 28 U.S.C. § 2254 through

which pro se Petitioner Michael Gelsinger ("Gelsinger") challenges his 2014 convictions for

first-degree murder and attempted homicide in the Dauphin County Court of Common Pleas.

This Court previously granted the petition based on a finding that Gelsinger's trial counsel

provided ineffective assistance of counsel, but the United States Court of Appeals for the Third

Circuit ("the Third Circuit") vacated the Court's judgment and remanded the case for further

proceedings consistent with its opinion.  Upon further consideration of Gelsinger's claims and

the parties' respective arguments in accordance with the Third Circuit's guidance, the Court will

deny the petition for writ of habeas corpus with prejudice.

## I.      BACKGROUND

Gelsinger is serving a term of life imprisonment imposed after he was convicted by a jury

of first-degree murder, attempted homicide, prohibited possession of a firearm, and carrying a

firearm without a license.  See Commonwealth v. Gelsinger, No. CP-22-CR-0000926-2014

(Dauphin Cnty. Ct. Com. Pl. Dec. 5, 2014).  The Superior Court of Pennsylvania ("the Superior

Court") set forth the background of the case as follows:

> At approximately 1:00 a.m. on December 6, 2013, Officer Michael Rudy of
> the Harrisburg City Police received a report of shots fired around the 1600 Block
> of Thompson Street in Harrisburg.  He arrived at 1619 Thompson Street and

encountered Shawn Fox, who resided there, standing on the front porch. Officer Rudy observed a non-responsive female, later identified as Fox's girlfriend, Tiana Dockens ("Victim"), lying on the porch. As Officer Rudy attempted to treat Victim, Fox's roommate and cousin, Justin Baxter, approached the porch "cursing, yelling," and acting "belligerent." Officer Rudy discovered "a very small hole" on Victim's abdomen. Other police officers arrived, and Officer Rudy rode in the ambulance with Victim to Hershey Medical Center where she was pronounced dead. The Dauphin County Coroner's Office performed an autopsy that morning and concluded, "[t]he cause of death [was] a gunshot wound to the abdomen" and the manner of death was homicide.

At the scene, police recovered three .380 cartridge casings that were discharged from the same firearm and five .40 casings discharged from a single Glock pistol. Police determined the Glock belonged to Baxter. They believed [Gelsinger], while a passenger in a car driven by his brother, Joseph Payne-Casiano, exchanged gunfire with Baxter resulting in Victim's death. Moreover, a bullet recovered from Victim was determined to be "of the .380, 9-millimeter class." The dock [sic] was ultimately discovered outside of 1617 Thompson Street, and the other firearm was never recovered.

On December 11, 2013, the Commonwealth filed a criminal complaint charging [Gelsinger] with the above crimes. The Commonwealth joined Payne-Casiano as a co-defendant, and charged him with murder and attempted murder.

On November 18, 2014, [Gelsinger] filed a motion for severance based on the Commonwealth's intention to introduce at trial a hand-written note by Payne-Casiano to another inmate. The contested portion of the note read, "1. Get at Moe see what she gone [sic] say at my bro trial, try convince her to say bull shot first." Appellant argued that under the United States Supreme Court decision in Bruton v. United States, 391 U.S. 123 (1968), if his codefendant declined to testify, the admission of Payne-Casiano's note would violate the Confrontation Clause of the Sixth Amendment[.] The trial court held oral argument and denied the motion on November 25, 2014.

See Commonwealth v. Gelsinger, No. 627 MDA 2015, 2016 WL 1221444, at *1 (Pa. Super. Ct. Mar. 29, 2016). Gelsinger's jury trial began on December 1, 2014. See id. at *2. During trial, the victim's father and sister testified that Gelsinger began shooting before Baxter did. See id. at *2–3. Gelsinger testified on his own behalf, and the essence of his defense "was that Baxter fired first, and he was 'in fear [for his] life, so [he] returned fire.'" See id. On December 5, 2014, the jury convicted Gelsinger of first-degree murder, attempted homicide, possession of a firearm prohibited, and carrying a firearm without a license. See id. Gelsinger subsequently

2

filed a post-sentence motion challenging the weight and sufficiency of the evidence, which the trial court denied on April 3, 2015.  See id.

Gelsinger timely appealed to the Superior Court, raising the following claims for relief: (1) the evidence was insufficient to prove that he committed first-degree murder and attempted homicide because the Commonwealth failed to prove that he "acted willfully, deliberately, or with premeditation" and failed to disprove that he acted in self-defense; (2) the trial court erred in denying his motion for severance; and (3) the verdict was against the weight of the evidence because the testimony presented by the Commonwealth was inconsistent and because the evidence failed to establish that he "acted with malice and the specific intent to kill."  (Doc. No. 13-1 at 11.)  On March 29, 2016, the Superior Court affirmed Gelsinger's judgment of sentence. See Gelsinger, 2016 WL 1221444, at *1.  On August 22, 2016, the Supreme Court of Pennsylvania denied Gelsinger's petition for allowance of appeal.  See Commonwealth v. Gelsinger, No. 290 MAL 2016 (Pa. 2016).

Gelsinger subsequently filed a pro se Post Conviction Relief Act ("PCRA") petition, raising several claims for relief, including claims of ineffective assistance of counsel.  See Gelsinger, No. CP-22-CR-0000926-2014.  Counsel was appointed to represent Gelsinger in the PCRA proceeding and filed an amended PCRA petition asserting the following four claims for relief: (1) trial counsel was ineffective for failing to argue that the Harrisburg Police Department did not perform gunshot residue testing on Payne-Casiano; (2) trial counsel was ineffective for failing to object to the Commonwealth's introduction of Baxter's holster and magazine at trial; (3) appellate counsel was ineffective for not raising the issue regarding the failure to perform gunshot residue testing on appeal; and (4) appellate counsel was ineffective for failing to file a cross-appeal on direct review as to the unreasonable application of established federal and state

law regarding the alleged <u>Bruton</u> violation.  (<u>Id.</u> at 5–6.)  The PCRA court held a hearing on

Gelsinger's amended PCRA petition on May 31, 2018 and June 1, 2018.  <u>See</u> <u>Gelsinger</u>, No. CP-

22-CR-0000926-2014.  During the hearing, Gelsinger's trial counsel, Andrea Haynes and Petra

Gross, testified in relevant part that their strategy during the trial was to argue that Gelsinger was

acting in self-defense when he fired his gun at Baxter.  (Doc. No. 76-2 at 175, 185.)

On August 17, 2018, the PCRA court dismissed Gelsinger's amended PCRA petition.

<u>See</u> <u>id.</u>  The Superior Court affirmed the dismissal of Gelsinger's amended PCRA petition on

March 4, 2019.  <u>See</u> <u>Commonwealth v. Gelsinger</u>, No. 1513 MDA 2018, 2019 WL 1012156, at

*1 (Pa. Super. Ct. Mar. 4, 2019).  On September 10, 2019, the Supreme Court of Pennsylvania

denied Petitioner's petition for allowance of appeal.  <u>See</u> <u>Commonwealth v. Gelsinger</u>, No. 193

MAL 2019 (Pa. 2019).

Gelsinger filed the instant petition for writ of habeas corpus on September 25, 2019.

(Doc. No. 1.)  He asserts ten claims for habeas corpus relief: (1) that trial counsel was ineffective

for failing to request a jury instruction on the lesser included charge of aggravated assault with

regard to the attempted murder of Baxter;[1] (2) that trial counsel was ineffective for failing to

impeach Monique Dockens with a prior statement; (3) that trial counsel was ineffective for

failing to request a cautionary eyewitness instruction concerning the testimony of Dion and

---

[1] Gelsinger frames his ineffectiveness claims as assertions that PCRA counsel was ineffective for failing to argue trial counsel's ineffectiveness.  <u>See</u> (Doc. No. 1).  This Court previously construed the claims not as advancing freestanding claims of PCRA counsel's ineffectiveness, but rather as arguing PCRA counsel's ineffectiveness to excuse the procedural default of his underlying claims of ineffective assistance of trial counsel pursuant to <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012).  <u>See</u> (Doc. No. 63 at 12).  To the extent the claims are intended as freestanding claims of PCRA counsel's ineffectiveness, they are denied because they are not cognizable habeas corpus claims.  <u>See</u> 28 U.S.C. § 2254(i) (stating that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254").

Monique Dockens; (4) that the trial court violated Gelsinger's rights under the Sixth Amendment by denying his motion for severance; (5) that trial counsel was ineffective for failing to request that Payne-Casiano's note be suppressed; (6) that trial counsel was ineffective for failing to request a change of venue; (7) that trial counsel was ineffective for failing to object when the Commonwealth questioned potential jurors about whether they had heard about the case in the presence of the entire jury panel; (8) that evidence at trial was insufficient to convict Gelsinger of first-degree murder and attempted homicide; (9) that trial counsel was ineffective for failing to object to the trial court's instruction on consciousness of guilt; and (10) that trial counsel was ineffective for failing to request a jury instruction indicating that transferred intent applied to third-degree murder as well as first-degree murder.  (Id.)  Recognizing that Gelsinger's ineffective assistance of counsel claims were procedurally defaulted in state court, the Court conducted an evidentiary hearing on June 17, 2021, to determine whether the procedural default could be excused based on PCRA counsel's purported ineffectiveness pursuant to Martinez.[2] (Doc. No. 58.)  During the hearing, the Court heard testimony from Gelsinger's trial counsel and his PCRA counsel.  (Id.)

Based in part on evidence adduced during the June 17, 2021 evidentiary hearing, the Court issued a Memorandum and Order on September 2, 2021, finding that: (1) the procedural default of Gelsinger's first and tenth claims was properly excused based on PCRA counsel's ineffectiveness under Martinez and (2) the first and tenth claims succeeded on their merits in showing ineffective assistance of trial counsel.  (Doc. Nos. 63–64.)  The Court accordingly

---

[2] As discussed in more detail below, Martinez holds that procedural default of an ineffective assistance of trial counsel claim may be excused in certain circumstances based on the ineffective assistance of counsel, or the lack of counsel, in initial post-conviction collateral proceedings.  See Martinez, 566 U.S. at 8–18.

granted the petition for writ of habeas corpus based on Gelsinger's first and tenth claims, vacated his convictions and sentences for first-degree murder and attempted homicide, and stated that the Commonwealth could retry Gelsinger within ninety days.  (Id.)  The Court additionally found that Gelsinger's eight other claims were moot because the Court had granted habeas corpus relief with respect to the first and tenth claims.  (Doc. No. 63 at 25 n.4.)  Respondents appealed on September 30, 2021.  (Doc. No. 65.)

On appeal, the Third Circuit vacated this Court's order granting the petition for writ of habeas corpus.  See Gelsinger v. Superintendent Fayette SCI, No. 21-2844, 2022 WL 3666228, at *1 (3d Cir. Aug. 25, 2022); (Doc. No. 69-1).  The Third Circuit noted that, based on the record, it appeared that this Court "both excused Gelsinger's procedural default and granted relief on his underlying IAC claim based, at least in part, on evidence beyond the state court record" gleaned from the evidentiary hearing.  See Gelsinger, 2022 WL 3666228, at *2.  The Third Circuit held that considering this evidence was improper under the Supreme Court's holding in Shinn v. Ramirez, 596 U.S. 366 (2022), because Shinn holds that "a habeas court 'may not consider new evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in [28 U.S.C.] § 2254(e)(2) are satisfied.'"  See Gelsinger, 2022 WL 3666228, at *2 (quoting Shinn, 596 U.S. at 366 (internal alterations omitted)).  "The proper procedure," the Third Circuit continued, "is to first 'decide whether an underlying ineffectiveness claim succeeds considering only the state court record," and then, if such a step is satisfied, conduct an evidentiary hearing to determine whether the procedural default of the underlying claim may be excused based on PCRA counsel's ineffectiveness.  See id. (quoting Williams v. Superintendent Mahanoy SCI, 45 F.4th 713, 724 (3d Cir. 2022)).  "[I]f the state court record alone does not allow the petitioner to succeed on the underlying ineffectiveness claim, 'a federal court must skip

hearings altogether and deny habeas relief.'"  Id. (quoting Williams, 45 F.4th at 723 (internal alterations omitted).  The Third Circuit accordingly remanded the case to this Court to determine whether Gelsinger's underlying ineffective assistance of counsel claims could be established based solely on the record that was developed in state court and not based on any evidence adduced during the June 17, 2021 evidentiary hearing.  See id. at *3.

Following remand, this Court reopened the case on November 21, 2022, and directed the parties to file supplemental briefs addressing the issues as framed by the Third Circuit.  (Doc. No. 73.)  Gelsinger timely filed a supplemental brief through counsel on January 9, 2023.  (Doc. No. 76.)  Respondents have not filed a supplemental brief responding to Gelsinger's brief, and the deadline for doing so has expired.  The petition is accordingly ripe for resolution.

## II.    LEGAL STANDARDS

### A.    Substantive Standard

Habeas corpus is an "extraordinary remedy" reserved for defendants who were "grievously wronged" by criminal proceedings.  See Calderon v. Coleman, 525 U.S. 141, 146 (1998).  The exercise of restraint by a federal court in reviewing and granting habeas corpus relief is appropriate due to considerations of comity and federalism.  See Engle v. Isaac, 456 U.S. 107, 128 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law."  Id.  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  See Brecht v. Abrahamson, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  See 28 U.S.C. § 2254(a).  If a claim presented in a Section 2254 petition has been adjudicated on the merits in state court proceedings, the Anti-Terrorism and Effective Death Penalty of 1996 ("AEDPA") sets stringent limits on a federal court's ability to issue a writ of habeas corpus.  Specifically, AEDPA states, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The standard for obtaining habeas corpus relief under AEDPA is "difficult to meet."  See Mays v. Hines, 592 U.S. 385, 391 (2021) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2021)).  Federal habeas corpus relief is meant to guard against "extreme malfunctions in the state criminal justice systems" and is not meant to substitute for "ordinary error correction through appeal."  See Harrington, 562 U.S. at 102–03 (citing Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J. concurring in judgment)).  "Federal habeas courts must defer to reasonable state-court decisions," see Dunn v. Reeves, 594 U.S. 731, 732 (2021), and may only grant habeas corpus relief when the state court's decision "was so lacking in justification" that its error was "beyond any possibility for fair minded disagreement," see Mays, 592 U.S. at 391 (quoting Harrington, 562 U.S. at 102).

**B.      Exhaustion and Procedural Default**

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b).  Under Section 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law to raise, by any available procedure, the question presented.  See O'Sullivan v. Boerckel, 526 U.S. 838 (1999).  A claim is exhausted when it has been "fairly presented" to the state court.  See Picard v. Connor, 404 U.S. 270, 275 (1971).  To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts."  See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).  The petition must present the claim "in a manner that puts [the respondents] on notice that a federal claim is being asserted."  See Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005).  "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim."  Collins v. Sec'y of Pa. Dep't of Corrs., 742 F.3d 528, 542 (3d Cir. 2014) (quoting Baldwin v. Reese, 541 U.S. 27, 32 (2004)).  Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies.  See 28 U.S.C. § 2254.  Overall, the exhaustion requirement advances the goals of comity and federalism while reducing "piecemeal litigation."  See Duncan v. Walker, 533 U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).  Claims deemed exhausted because of a state procedural bar are considered procedurally defaulted.  See Lines v. Larkins,

208 F.3d 153, 159 (3d Cir. 2000).  The district court then analyzes the claims under the

procedural default doctrine.  See id.  The purpose of this rule is to prevent habeas petitioners

from avoiding the exhaustion doctrine by defaulting their claims in state court.  See Coleman v.

Thompson, 501 U.S. 722, 732 (1991).  In Cone v. Bell, 556 U.S. 449 (2009), the United States

Supreme Court explained:

> It is well established that federal courts will not review questions of federal law
> presented in a habeas petition when the state court's decision rests upon a state-law
> ground that is independent of the federal question and adequate to support the
> judgment.  In the context of federal habeas proceedings, the independent and
> adequate state ground doctrine is designed to ensure that the State's interest in
> correcting their own mistakes is respected in all federal habeas cases.  When a
> petitioner fails to properly raise his federal claims in state court, he deprives the
> State of an opportunity to address those claims in the first instance and frustrates
> the State's ability to honor his constitutional rights.  Therefore, consistent with the
> longstanding requirement that habeas petitioners must exhaust available state
> remedies before seeking relief in federal court, we have held that when a petitioner
> fails to raise his federal claims in compliance with relevant state procedural rules,
> the state court's refusal to adjudicate the claim ordinarily qualifies as an
> independent and adequate state ground for denying federal review.

See id. at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court

invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner.

A state procedural rule can preclude federal habeas corpus review "only when the state rule is

'independent of the federal question [presented] and adequate to support the judgment.'"  See

Levya v. Williams, 504 F.3d 357, 365 (3d Cir. 2007) (citing Nara v. Frank, 488 F.3d 187, 199

(3d Cir. 2007)).  The requirements of independence and adequacy are distinct.  See id.  A rule is

"independent" if it is not dependent on any federal constitutional question, but "[a] state

procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with

federal law' that it cannot be said to be independent of the merits of a petitioner's federal

claims."  See Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004).  A rule is "adequate" if "it

was firmly established, readily ascertainable, and regularly followed at the time of the purported default." Levya, 504 F.3d at 366 (quoting Szuchon v. Lehman, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." See Coleman, 501 U.S. at 750. In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000) (citing Harris v. Reed, 489 U.S. 255 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982); see also Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008).

To show "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." See Schlup v. Delo, 513 U.S. 298, 326 (1995). Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice. See id. In Goldblum v. Klem, 510 F.3d 204 (3d Cir. 2007), the Third Circuit explained the applicable two-step inquiry as follows:

first, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial," and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'"  See id. at 225 (citing Hummard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004)).  If a petitioner can establish cause and prejudice or a fundamental miscarriage of justice, the Court excuses his default and reviews the merits of the claim presented.

### C.    Ineffective Assistance of Post-Conviction Counsel as Cause for Procedural Default

In Martinez v. Ryan, the United States Supreme court recognized that, under certain circumstances, the procedural default of an ineffective assistance of trial counsel claim may be excused where the default was caused, in turn, by ineffective assistance of counsel, or the lack of counsel, in initial post-conviction collateral proceedings.  See Martinez, 566 U.S. at 8–18. Specifically, the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

See id. at 17.  For Martinez to apply, Petitioner must show that his ineffective assistance of trial counsel claims have "some merit," and that he had ineffective counsel at the initial-review stage of state collateral proceedings.  See Workman v. Sup't Albion SCI, 915 F.3d 928, 937 (3d Cir. 2019).  To demonstrate that a claim has some merit, a petitioner must "show that some reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  See id. at 938.  This standard is different from the "standard

applied on the merits under <u>Strickland v. Washington</u>," <u>see</u> <u>id.</u>, because "substantiality is a notably lower standard than the proof of prejudice required by <u>Strickland's</u> second prong." <u>See</u> <u>Richardson v. Sup't Coal Twp. SCI</u>, 905 F.3d 750, 764 (3d Cir. 2018).

To demonstrate that PCRA counsel's deficient performance caused prejudice, Petitioner "must show that his [PCRA counsel] could have obtained a different result had [counsel] presented the now-defaulted ineffective-assistance-of-trial-counsel claim." <u>See</u> <u>Workman</u>, 915 F.3d at 938. However, at this stage, "what is important is that the underlying ineffective-assistance-of-trial-counsel claim is 'substantial,' not that a petitioner has, in fact, been 'prejudiced' by trial counsel's deficient performance under <u>Strickland</u>." <u>See</u> <u>id.</u> at 939. Accordingly, if Petitioner "shows that his underlying ineffective-assistance-of-trial-counsel claim has some merit and that his state post-conviction counsel's performance fell below an objective standard of reasonableness, he has shown sufficient prejudice from counsel's ineffective assistance that his procedural default must be excused under <u>Martinez</u>." <u>See</u> <u>id.</u>

Although district courts routinely conducted evidentiary hearings in the years following <u>Martinez</u> to determine whether counsel in a collateral proceeding was sufficiently ineffective to excuse a procedural default under <u>Martinez</u>, the United States Supreme Court severely restricted the conditions under which such evidentiary hearings may be conducted in <u>Shinn</u>. In <u>Shinn</u>, the Supreme Court noted that "the standard to expand the state-court record" in a Section 2254 habeas corpus proceeding, "is a stringent one":

> If a prisoner has "failed to develop the factual basis of a claim in State court proceedings," a federal court "shall not hold an evidentiary hearing on the claim" unless the prisoner satisfies one of two narrow exceptions, see 28 U.S.C. § 2254(e)(2)(A), and demonstrates that the new evidence will establish his innocence "by clear and convincing evidence," § 2254(e)(2)(B).

See Shinn, 596 U.S. at 371.  Evidentiary hearings, the Supreme Court noted, are barred in "all but these extraordinary cases."  See id.  The Shinn Court concluded that Martinez does not create an exception to the barriers to evidentiary hearings created by 28 U.S.C. § 2254(e).  See id. Thus, the Supreme Court held, "under § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel."  See id. at 382.  Under Shinn, if a petitioner cannot meet the "stringent requirements" necessary to expand the state court record under Section 2254(e), "a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice under Martinez."  See id. at 389.

The Third Circuit provided additional explanation of the standard district courts must apply under Shinn in Williams, 45 F.4th at 723.  Under Shinn, the Williams court explained, "when a state post-conviction attorney negligently fails to develop the facts needed to support a claim, 'a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements,'" and district courts may not "end-run" around this limit on evidentiary hearings by conducting a Martinez hearing on procedural default "and then using the expanded federal record to decide the merits of a habeas claim."  See id. at 723 (quoting Shinn, 596 U.S. at 384, 389).  Given the limits imposed on evidentiary hearings by Section 2254(e) and Shinn, the Williams court noted that Martinez evidentiary hearings on procedural default are a "waste of time" unless the petitioner "can prevail on the state court record" on his underlying ineffective assistance of trial counsel claim. See id. at 723.  Thus, under Shinn, "to avoid prolonging federal habeas proceedings," district courts "must skip hearings altogether and deny habeas relief unless the prisoner prevails on the merits considering only the state court record."  See id. at 723–24 (citing Shinn, 596 U.S. at

14

390).  "So before holding a <u>Martinez</u> hearing . . . federal courts in these cases should decide

whether an underlying ineffectiveness claim succeeds considering only the state court record.  If

not, federal courts should deny relief without more."  <u>See</u> <u>id.</u> at 724.

The Third Circuit in the instant case specifically directed this Court to decide this case

based on the standards enumerated by <u>Shinn</u> and <u>Williams</u>.  The "proper procedure" for this

Court to follow, the Third Circuit explained, "is to first 'decide whether an underlying

ineffectiveness claim succeeds considering only the state court record,'" and then, if such a step

is satisfied, conduct an evidentiary hearing to determine whether the procedural default of the

underlying claim may be excused based on PCRA counsel's ineffectiveness.  <u>See</u> <u>Gelsinger</u>,

2022 WL 3666228, at *2 (quoting <u>Williams</u>, 45 F.4th at 724).

### D. Standard for Ineffective Assistance of Counsel Claims

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court

explained that there are two components to demonstrating a violation of the right to effective

assistance of counsel.  First, the petitioner must show that counsel's performance was deficient.

This requires showing that "counsel's representation fell below an objective standard of

reasonableness."  <u>See</u> <u>id.</u> at 668; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 390–91 (2000).

Second, under <u>Strickland</u>, the petitioner must show that he was prejudiced by the deficient

performance.  "This requires showing that counsel's errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable."  <u>Strickland</u>, 466 U.S. at 687.  To

establish prejudice, the defendant "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>See</u>

<u>id.</u> at 694.  The <u>Strickland</u> test is conjunctive and a habeas petitioner must establish both the

deficiency in the performance prong and the prejudice prong.  See id. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987).

When considering an ineffective assistance of counsel claim, the Court's analysis is "doubly deferential" when a state court has already decided that counsel's performance was adequate.  See Dunn, 594 U.S. at 739.  The Court must apply a high level of deference both to counsel's actions and to the state court's determination that counsel's actions were constitutionally adequate.  See id.; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003)).  The federal court may only grant habeas corpus relief if "every 'fairminded jurist' would agree that every reasonable lawyer would have made a different decision."  See id. at 2411 (emphasis in original) (quoting Harrington, 562 U.S. at 101).

### E.     Standard for Sufficiency of Evidence Claims

Federal habeas courts considering sufficiency of evidence claims must view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  See Jackson, 443 U.S. at 319 (emphasis in original).  The Court must look to state law to determine the substantive elements of the offense.  See Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 324 n.16).  When the claim has been decided on its merits in state court, the federal court must be doubly deferential: the jury's verdict may only be set aside if no rational finder of fact could have reached the same verdict and the state court decision upholding the jury verdict may only be disturbed if it is objectively unreasonable.  See Lambert v. Warden Greene SCI, 861 F.3d 459, 467 (3d Cir. 2017) (citing Coleman, 566 U.S. at 650).

F.    **Standard for Claims Challenging Denial of Motions to Sever**

The United States Supreme Court has held that "'a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial,' even with a proper instruction." Samia v. United States, 599 U.S. 635, 647 (2023) (quoting Richardson v. Marsh, 481 U.S. 207, 208 (1987)). This rule, first recognized in Bruton, 391 U.S. at 135, represents a "narrow exception" to the general principle that incriminating out-of-court statements may be admitted as evidence provided that the jury has been given proper instructions on how to consider the statements as evidence. See Richardson, 481 U.S. at 207 (citing Bruton, 391 U.S. at 135–36). Although Bruton recognizes that jury instructions are not sufficient to cure the prejudice caused to a defendant by admission of a codefendant's out-of-court confession, jury instructions may be sufficient to cure the prejudice in instances where a codefendant's out-of-court statement does not directly implicate the defendant but rather only does so inferentially. See id.; accord Samia, 599 U.S. at 649–50.

III.    **DISCUSSION**

As noted above, the Third Circuit has remanded this case for further proceedings as to Gelsinger's first and tenth claims, on which the Court previously granted habeas corpus relief based on a finding that Gelsinger established ineffective assistance of counsel. Pursuant to the Third Circuit's directions on remand, the Court must reassess the merits of these claims based only on the evidence developed in the state court record. See Gelsinger, 2022 WL 3666228, at *2–3; see also Shinn, 596 U.S. at 382; Williams, 45 F.4th at 724. The Court may only consider whether Gelsinger can overcome the procedural default of the claims caused by PCRA counsel's purported ineffectiveness if the Court first determines that the claims succeed on their merits based on the closed state court record. See Gelsinger, 2022 WL 3666228, at *2–3.

In Gelsinger's first and tenth claims, he asserts that counsel was ineffective for failing to request jury instructions on a lesser included charge and transferred intent. (Doc. No. 1.) Gelsinger contends that these claims may still be established on the closed state court record because ineffective assistance of counsel is established when counsel fails to suggest jury instructions that would be favorable to his client "unless the failure is a strategic choice." (Doc. No. 76 at 23 (quoting Bey v. Superintendent Greene SCI, 856 F.3d 230, 238 (3d Cir. 2017).) Gelsinger notes that "[r]espondents do not offer a strategic reason for the omitted instructions" and posits that "none exists." (Id.)

The Court finds that Gelsinger cannot establish ineffective assistance of counsel on the closed state court record. Although Gelsinger is correct that an attorney's choice to decline to request jury instructions favorable to the attorney's client may constitute ineffective assistance of counsel, this is not true when the decision is based on a strategic choice. See Bey, 856 F.3d at 238. Accordingly, to determine whether counsel acted reasonably in declining to request jury instructions, the Court must consider the decision in light of counsel's trial strategy. See id.; see also United States v. Ware, 595 F. App'x 118, 121 (3d Cir. 2014) (unpublished) (denying habeas corpus petition where record established that counsel "had a strategic reason" for declining to request a jury instruction favorable to the defendant).

During PCRA proceedings, trial counsel testified that Gelsinger's strategy at trial was to argue that he was acting in self-defense based on Baxter purportedly shooting first. (Doc. No. 76-2 at 175, 185.) Neither Gelsinger's PCRA counsel nor counsel for the Commonwealth, however, elicited any testimony or other evidence as to whether the choice not to request jury instructions was a strategic decision based on the overarching theory of self-defense or how the failure to request the jury instructions would have harmed that strategy. See generally (id. at

18

172–89).  Accordingly, because Gelsinger failed to develop the state court record on these

claims, the Court cannot conclude that the failure to request jury instructions was harmful to

counsel's strategy when there is no evidence to establish that point.  The Court must presume

that counsel's actions were based on a reasonable strategy, and "the absence of evidence cannot

overcome the strong presumption that counsel's conduct fell within the wide range of reasonable

professional assistance."  See Williams, 45 F.4th at 726.  Gelsinger's argument to the contrary

that Respondents have not "offer[ed]" a strategic reason for trial counsel's failure to request jury

instructions favorable to Gelsinger misapprehends the burden of proof applicable to a petition for

writ of habeas corpus.  It is Gelsinger's burden to establish deficient representation by trial

counsel; it is not respondent's burden to show that counsel acted reasonably.  On a closed state

court record, Gelsinger cannot meet this burden.  The Court will accordingly deny Gelsinger's

first and tenth claims for habeas corpus relief.

Gelsinger's other ineffective assistance of counsel claims also fail on the closed state

court record.[3]  Gelsinger asserts ineffective assistance based on trial counsel's failure to: (1)

impeach Monique Dockens with a prior statement (claim two); (2) request a cautionary jury

instruction concerning the testimony of Dion and Monique Dockens (claim three); (3) request

that Payne-Casiano's note be suppressed (claim five); (4) request a change of venue (claim six);

(5) object to potential jurors being questioned in front of other potential jurors (claim seven); and

(6) object to the trial court's instruction on consciousness of guilt (claim nine).  (Doc. No. 1.)

---

[3]  The Court previously found that Gelsinger's other claims were moot based on the Court's
decision to grant a writ of habeas corpus on the first and tenth claims.  See (Doc. No. 63 at 25
n.10).  Because the Court has now denied relief on those claims, the Court must determine
whether the remaining ineffective assistance of counsel claims can succeed on the closed state
court record before it may determine whether Gelsinger can overcome the procedural default of
the claims based on PCRA counsel's alleged ineffectiveness.  See Gelsinger, 2022 WL 3666228,
at *2 (quoting Williams, 45 F.4th at 724).

The Court must presume, however, that counsel took these actions based on a reasonable trial strategy.  See Williams, 45 F.4th at 726.  The state court record is devoid of any evidence as to how counsel's allegedly deficient performance harmed counsel's overarching theory that Gelsinger acted in self-defense, and the Court cannot grant habeas corpus relief on an ineffective assistance of counsel claim based on an absence of evidence.  See id.  Accordingly, the Court will deny relief on claims two, three, five, six, seven, and nine.

The Court must additionally analyze Gelsinger's claims that there was insufficient evidence to convict him of first-degree murder and attempted homicide (claim eight) and that the trial court violated his rights under the Sixth Amendment by denying his motion for severance (claim four).[4]  Unlike Gelsinger's ineffective assistance of counsel claims, these two claims were denied on their merits in state court.  AEDPA accordingly requires this Court to grant significant deference to the state court decision denying habeas corpus relief on the claims.  See 28 U.S.C. § 2254(d); Dunn, 594 U.S. at 732; Mays, 592 U.S. at 391.

Gelsinger argues that there was insufficient evidence to convict him of first-degree murder or attempted homicide.  The Court must begin its analysis by looking to the substantive elements of the offenses under state law.  See Coleman, 566 U.S. at 655.  Under Pennsylvania law, first-degree murder requires proof "that a human being was unlawfully killed, that the accused was responsible for the killing, and that the accused acted with a specific intent to kill."  See Commonwealth v. Pagan, 950 A.2d 270, 278–79 (Pa. 2008) (citing 18 Pa.C.S. § 2502(a), (d)).  "An intentional killing is a 'killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing.'"  Id. (quoting 18 Pa.C.S. § 2502(d)).  "The

---

[4]  As noted above, these claims are no longer moot given that the Court has now determined that Gelsinger is not entitled to habeas corpus relief on his first and tenth claims.

Commonwealth may prove that a killing was intentional solely through circumstantial evidence. Moreover, a specific intent to kill may be inferred from the use of a deadly weapon to inflict injury on a vital part of the body."  Id. (citing Commonwealth v. McCullum, 602 A.2d 13, 322–23 (1992).  To prove an attempt to commit a crime under Pennsylvania law, the Commonwealth must prove (1) that the defendant had a specific intent to commit the crime and (2) that he took a substantial step towards completion of the crime.  See Commonwealth v. Henley, 474 A.2d 1115, 1118 (Pa. 1984).

The Superior Court considered Gelsinger's sufficiency of evidence argument on its merits and concluded that there was sufficient evidence to convict him of first-degree murder and attempted homicide.  The Superior Court noted that there was testimony in the record that Gelsinger had fired his gun at Baxter three times from the car in which he was sitting, and that Baxter had not drawn a weapon or otherwise taken any aggressive actions towards the car at the time Gelsinger fired the shots.  See Gelsinger, 2016 WL 1221444, at *7.

This Court must defer to the state court's sufficiency of evidence ruling if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  See Jackson, 443 U.S. at 319 (emphasis in original).  Here, there was clearly sufficient evidence for a finder of fact to convict Gelsinger.  Eyewitness testimony from the victim's father was "a hundred and fifty percent" certain that Gelsinger had fired the first shots, and both the victim's father and the victim's sister testified that Baxter had not pointed his gun at Gelsinger or otherwise moved aggressively towards Gelsinger prior to Gelsinger shooting.  See Gelsinger, 2016 WL 1221444, at *6.  Furthermore, Gelsinger himself testified that it was the bullets fired from his gun that killed the victim.  See id. at *4.  Although Gelsinger testified that Baxter shot first and that killing the victim was an "accident," see id., the jury was free to credit the contrary

21

testimony of the victim's father and sister that Gelsinger had shot first and appeared to be the aggressor when he and Baxter were firing their guns.  Furthermore, as the Superior Court noted, it is of no moment that Gelsinger intended to kill Baxter when he killed the victim because the transferred intent doctrine recognizes that "the intent to murder may be transferred where the person actually killed is not the intended victim."  See id. at *7 n.10 (quoting Commonwealth v. Jones, 912 A.2d 268, 279 (Pa. 2006)).  Thus, the Court will deny habeas corpus relief with respect to the sufficiency of evidence claim (claim eight).

Finally, Gelsinger argues that the trial court's denial of his motion to sever his trial from Payne-Casiano's trial violates his Sixth Amendment right to confront witnesses against him (claim four).  (Doc. No. 1 at 17.)  This argument is based on the admission of a handwritten note given by Payne-Casiano to another inmate in Dauphin County Prison, James Moffitt, which implored Moffitt to "Get at Moe see what she gone say at my bro trial, try convince her to say bull shot first."  See Gelsinger, 2016 WL 1221444, at *1 (all errors in original note).  Moffitt testified that Payne-Casiano had given him the note while they were incarcerated together because Payne-Casiano wanted Moffitt "to do some things for him."  See id. at *4.  Prior to publishing the note to the jury, the trial court gave a cautionary instruction that it could only consider the note as evidence against Payne-Casiano and not against Gelsinger.  See id. Gelsinger argues that admitting this note into evidence without severing his trial from Payne-Casiano's trial violates his rights under the Confrontation Clause pursuant to Bruton, 391 U.S. at 12, and its progeny.  (Doc. No. 1 at 17.)

The Superior Court considered Geisinger's severance argument and denied it on its merits.  The Superior Court noted that the trial court had given a cautionary instruction to the jury not to consider the note as evidence against Gelsinger.  See Gelsinger, 2016 WL 1221444, at

*9.  The Superior Court further noted that the case did not "present a classic <u>Bruton</u> issue" because the note was not "a confession by Payne-Casiano offered for the truth of the matter asserted" and did not "directly and powerfully implicate [Gelsinger] in the crime."  <u>See</u> <u>id.</u>  The Superior Court additionally stated that the note was not an "assertion," because it did not affirmatively state that Gelsinger was the one who shot first but rather simply tried to "convince a witness to testify in a manner favorable to [Gelsinger's] defense."  <u>See</u> <u>id.</u>

The Superior Court's conclusion that the trial court's jury instruction was sufficient to cure any prejudice to Gelsinger was reasonable and was not contrary to clearly established federal law.  As the Superior Court noted, Payne-Casiano's note did not directly implicate Gelsinger in the crime, but only did so inferentially.  <u>See</u> <u>id.</u>  The United States Supreme Court has held that jury instructions may be sufficient to cure the prejudice caused to a defendant by the introduction of such inferentially incriminating statements.  <u>See</u> <u>Richardson</u>, 481 U.S. at 208.  The Superior Court found that the jury instruction was sufficient in this case considering the content of the note and the other circumstances surrounding its admission into evidence.  <u>See</u> <u>Gelsinger</u>, 2016 WL 1221444, at *9.  This Court must defer to the Superior Court's reasonable conclusion and cannot substitute its own judgment as to whether severance was warranted.  <u>See,</u> <u>e.g.</u>, <u>Dunn</u>, 594 U.S. at 732.  Accordingly, the Court will deny habeas corpus relief with respect to Gelsinger's severance claim (claim four).

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Gelsinger's petition for writ of habeas corpus with prejudice.  A certificate of appealability will not issue because no reasonable jurist would disagree with this ruling or conclude that the issues presented are adequate to deserve

encouragement to proceed further.  See Buck v. Davis, 580 U.S. 100, 115 (2017) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)).  An appropriate Order follows.


s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania